EUREKA ICE CO. v. BUCKLOO.*
(No. 597.)

(Court of Civil Appeals of Texas. El Paso. June 17, 1916. Rehearing Denied Oct. 5, 1916.)

1. DAMAGES ☞208(4)—ACTION FOR INJURY— ISSUES—LOSS OF EARNINGS.

In a servant's action for personal injury, where there was evidence that he was earning $14 per week when injured, and that for some time thereafter he was unable to perform any work, there was no error in submitting an is-

sue as to the reasonable value of the time lost on account of his injury.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 533, 534; Dec. Dig. ☞208(4).]

2. TRIAL ☞351(5)—SPECIAL ISSUES — MATTER COVERED BY GENERAL CHARGE.

In a servant's action for injury, there was no error in refusing to submit defendant's special issue as to whether the risk of slipping in oil or grease on the engine room floor was a risk ordinarily incident to plaintiff's employment as a stationary engine fireman, where the issue was sufficiently submitted by the special issue of the general charge as to whether the risk of plaintiff's foot slipping at the time and place of the injury was a risk assumed by him.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 834; Dec. Dig. ☞351(5).]

3. TRIAL ☞232(2)—SPECIAL INSTRUCTION— GENERAL VERDICT.

In a servant's action for injury, submitted on special issues, a special charge calling for a general verdict was properly refused.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 524; Dec. Dig. ☞232(2).]

4. MASTER AND SERVANT ☞278(3)—ACTION FOR INJURY — SUFFICIENCY OF EVIDENCE — NEGLIGENCE.

In a suit for damages for personal injury to a stationary engine fireman who slipped in a puddle of oil and fell against the driving rod of an engine, evidence held to sustain a finding that defendant was negligent in allowing the puddle to be and remain upon the floor.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 958; Dec. Dig. ☞278(3).]

5. MASTER AND SERVANT ☞278(8)—SUFFICIENCY OF EVIDENCE — SAFE PLACE TO WORK—LIGHTS.

In such action preponderance of evidence held not against the finding that the building near the engine was not properly and sufficiently lighted.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 958; Dec. Dig. ☞278(8).]

6. APPEAL AND ERROR ☞1003 — REVIEW— PREPONDERANCE OF EVIDENCE.

A mere preponderance of evidence against a finding will not, under the rules, authorize a reversal; but, where the statement of facts shows that the preponderance and weight of the evidence are such as to indicate that the jury have not been governed thereby in arriving at a verdict, appellate courts have the authority to reverse for new trial.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3938–3943; Dec. Dig. ☞1003.]

Appeal from District Court, Harris County; John A. Read, Judge.

Action by Oscar Buckloo against the Eureka Ice Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Hunt, Myer & Teagle and Moody & Boyles, all of Houston, for appellant. L. E. Blankenbecker, John Lovejoy, and Presley K. Ewing, all of Houston, for appellee.

HARPER, C. J. This suit was brought by appellee to recover damages of appellant for personal injuries. He alleged that at the time of his injury he was in the employ of the defendant as a stationary engine fireman at its plant, where the defendant was en-

gaged in the manufacture and distribution of ice; that at or about 9 o'clock at night, while he was engaged in his duties, it became necessary for him to leave the fireroom, where his main duties were performed, to go to the storage tank of defendant, located about 100 feet from said fireroom, to get a drink of water; that in doing so he went along the regular passageway leading from said fireroom to said storage tank, and that in doing so it was necessary for him to pass by the driving shaft of the engine, which was located by the side of said passageway; that the plaintiff, after getting the water, began to return toward said fireroom along said above-described course, which was the regular and proper course by which to return, and began to follow the direct path or course to said fireroom, when his foot, after he had gone a short distance, came in contact with a puddle of grease in said passageway, which caused his said foot to slip from under him, causing him to lose his equilibrium and fall down, into, and against said driving rod, which was revolving very rapidly and with great force, so that his shoulders and head and the upper part of his body came in contact with said driving shaft, with the result that he was seriously and permanently injured; that said injuries and the fall causing the same were proximately caused by the negligence of the defendant, its vice principals and agents, in this, in negligently failing to furnish plaintiff a reasonably safe place to work, in that the defendant, its vice principals and agents, had negligently allowed and permitted a large puddle of grease or oil to be and remain in said passageway, and also allowed and permitted said passageway to be and remain greasy and oily about and near to said revolving shaft, by permitting particles or bumps of grease or oil to be near said shaft. And the plaintiff alleges that the defendant, its vice principals and agents, were negligent in allowing the same to be and remain in said passageway, and in thus allowing the same to be there, negligently failed for the defendant in its nondelegable duty to furnish the plaintiff a reasonably safe place in which to work and perform his duties, and negligently exposed him to an unusual and extraordinary hazard; that the defendant, its vice principals and agents, were further negligent in that they failed to have said passageway properly lighted, and to have and maintain the lights in working condition and proper order, the light along said way being too dim to enable plaintiff to see and distinguish such dangerous objects as said grease, which was imminently liable to cause him to fall into said revolving machinery; that the plaintiff was thereby negligently exposed to an extraordinary danger and hazard by the defendant, the presence of which he did not know, but which the defendant and its vice principals and agents

did know of, or would and should have known of by the exercise of ordinary care in time to have remedied the same, but negligently took no steps to remedy the same or to discover the same, and negligently failed to warn the plaintiff thereof, the defendant thus failing in its nondelegable duty to furnish the plaintiff a safe place in which to perform his duties, and negligently exposing him to extraordinary hazards and dangers which he did not assume; that each and all of said acts were negligence and each and all proximately caused and contributed to the plaintiff's fall and the injuries consequent therefrom.

Defendant answered by special denials as to the existence of the puddle of grease and other grounds of negligence, denied that the injuries were permanent, and pleaded contributory negligence and assumed risk.

The cause was submitted by special issues, which issues and the answers thereto are as follows, to wit:

"(1) Was the plaintiff injured on or about the date alleged in his petition by falling into or against the driving rod or shaft of defendant's engine? Answer: Yes.

"(2) Had the plaintiff and other employés been customarily going to the storage tank of defendant for drinking water? Answer: Yes.

"(3) If you answer the next preceding issue in the affirmative, then answer the following: Was such done with the knowledge and consent of defendant? Answer: Yes.

"(4) Was plaintiff, at the time of his injury, returning from a trip to the defendant's storage tank for water? Answer: Yes.

"(5) Was there, or not, at the time of the alleged injury, a large puddle of grease or oil in the passageway between the defendant's fireroom and the storage tank near the driving rod or shaft of the engine which plaintiff is alleged to have fallen against? Answer: Yes.

"(6) If you have answered the last two preceding issues in the affirmative, and only in that event, you will then answer the following question: While the plaintiff was returning from the water tank, did his foot come in contact with said puddle of grease or oil? Answer: Yes.

"(7) In the event you have answered the next preceding issue in the affirmative, then you will answer the following question: Was or was not the plaintiff thereby caused to fall into and against the driving rod or shaft of the engine? Answer: Yes.

"(8) In the event you have answered the sixth, seventh, and eighth issues in the affirmative, and only in such event, then you will answer the following: Was the defendant guilty of negligence in allowing said puddle of grease or oil to be and remain there? Answer: Yes.

"(9) If you have answered the next preceding issue in the affirmative, then you will answer the following question: Was such negligence a proximate cause of the injury? Answer: Yes.

"(10) Did the defendant have the said building by and near to the driving shaft of the engine properly and sufficiently lighted? Answer: No.

"(11) If you find there was improper and insufficient lighting, was it due to negligence on the part of defendant? Answer: Yes.

"(12) If you find there was such defective and insufficient lighting, then was the same a proximate cause of plaintiff's injuries, if any? Answer: Yes.

"(13) Was plaintiff negligent in causing or contributing to cause his injuries in working

at the ice plant while under the influence of any drug or medicine which rendered him temporarily incapable of protecting himself against moving machinery? Answer: No.

"(13½) Was plaintiff guilty of negligence in causing or contributing to cause his injury in being where he was at the time and place he was injured? Answer: No.

"(14) The employer owes a duty to the employé to exercise ordinary care to provide a reasonably safe place for the performance of the employé's duty. An employé is held in law to assume the risks arising from such dangers as are ordinarily incident to his employment; but he does not assume risks from dangers arising from negligence of the employer, unless he knows thereof, or in the performance of the duties of his employment must necessarily know thereof. Risks from dangers due to negligence of the employer which are known to the employé, or in the performance of his duties must necessarily be known to the employé, are assumed by him. Bearing the foregoing instructions in mind, you will answer the following: Was the risk of plaintiff's foot slipping at the time and place of its occurrence (if it occurred) one of the risks assumed by plaintiff? Answer: No.

"(15) What sum of money will fairly and adequately compensate the plaintiff for the injuries, if any, which he has alleged and proved to have suffered on the occasion in question? Answer by stating the amount. In answering this question, you will take into consideration as elements of damage, if proved: (1) Mental anguish and physical suffering to plaintiff on account of such injuries, if any, including such as he will, in reasonable probability, suffer therefrom in the future, if any; and (2) the reasonable value of his time already lost on account of such injuries, if any; and (3) the reasonable value of necessary medical attention on account of such injuries, if any; and (4) the reasonable value, if paid now, of his diminished capacity to labor and earn money in the future on account of such injuries, if any? Answer: $7,500.

"(16) Was plaintiff's injury due to his carelessly and negligently permitting his clothing to come in contact with the revolving wheel or piston rod or other portion of the machinery? Answer: No.

"(17) If you find that, as alleged by the plaintiff, there was oil or grease on the floor of the engine room when and where plaintiff was injured, and you further find that the fact that such oil or grease was there was negligence, then in that event you will answer the following: Was the presence of the oil or grease on the floor due to the negligence on the part of the employé, Gohr, or the employé, Cannon? In answer to this question you will write the name of the employé whom you so find to be negligent; and if you find both of them to have been negligent, then so state; and if you find neither of them to have been negligent, then so state. Answer: Cannon and Gohr."

Upon the foregoing answers the court rendered judgment for plaintiff for $7,500, from which this appeal is prosecuted.

[1] The first assignment is that the court erred in submitting to the jury subdivision No. 2 of special issue No. 15, because there was no evidence before the jury upon which they could fairly and reasonably find the amount of damages plaintiff had sustained, if any, on that account. There is evidence that plaintiff was earning $14 per week at the time he was injured, and there is evidence that for some time after the accident and injury he was unable to perform any labor, and, we think, sufficient upon which to base a finding for the value of the time lost.

[2] The second is that the court erred in refusing to submit special issue requested by defendant which reads:

"Was such risk of slipping in oil or grease on the engine room floor such a risk as was ordinarily incident to the employment in which plaintiff was then engaged? Answer 'Yes' or 'No,' as you may find the facts to be."

The court did not err in refusing this special charge because the issue is sufficiently submitted by special issue No. 14 of the general charge, quoted above.

[3] The third is that the court erred in refusing to give the following special charge:

"Unless you believe from a preponderance of the evidence that the plaintiff slipped in oil or grease and fell, and that the accident resulted therefrom, as alleged by him, you should not consider any other issue submitted to you, but return a verdict for the defendant."

It will be noted that this is a special charge calling for a general verdict. As such, it was not error to refuse to give it. I. & G. N. Ry. Co. v. Reek, 179 S. W. 699.

The fourth, fifth, and sixth assignments charge that the findings of the jury that there was a puddle of grease in the passageway by which he was caused to fall into and against the driving rod of the engine is not supported by the preponderance of the evidence. We have carefully read the entire statement of facts, and from this reading are of the opinion that there is sufficient evidence to sustain the allegation of plaintiff that he slipped in a puddle of oil.

[4] The seventh is that the finding by the jury that the defendant was guilty of negligence in allowing the puddle of grease or oil to be and remain upon the floor is unsupported by the evidence. The proposition is that unless the defendant knew of the existence of the defect, or could have known of it by the exercise of ordinary care on its part, there can be no recovery. The statement of facts shows only two ways by which the oil could have gotten onto the floor by any act of defendant's agents and employés—one that the oiler spilled it there. The evidence shows that this occurred at times, and that it was the duty of certain employés to clean it up when it happened, and the same rule applied if the pit underneath the engine got so full that is slopped out over the sides. There is evidence that upon this particular night the passageway by the engine was poorly lighted, and that the man whose duty it was to oil the engine and the man whose duty it was to see that the oil was kept cleaned up were not at their posts of duty for some time—one witness said for 40 minutes. No witness testified affirmatively that there was no oil there at the time plaintiff claimed he slipped in the oil. Several testified that after the accident there was oil all around the place. So, with the affirmative testimony of the plaintiff that he slipped in the oil, together with the testimony that neither of the two persons whose duty it was

to keep the premises clean of oil were attending to their duties upon this night, but were drinking, etc., we think this sufficient to support the finding of the jury in the respect complained of.

[5, 6] The eighth is that the preponderance of the evidence is against the finding of the jury that the building near the engine and driving shaft was not properly and sufficiently lighted. Two witnesses testified that the lights were dim. Whitehead testified that after the accident he had to call for another lamp so he could see how to clean up the oil, etc. There were only four persons there. Two testify that the lights were dim and two that they were all right. The two who testify to their being all right were charged with the duty of keeping them so, and three witnesses testify that these two men were not about the work that night for some time before the accident, but were on the outside of the building, drinking beer.

A mere preponderance of the evidence would not, under the rules, authorize a reversal of this cause, but, where the statement of facts shows that the preponderance and the weight of the evidence is such as to indicate that the jury have not been governed thereby in arriving at a verdict, appellate courts have authority and do reverse causes for new trials, but we see no such condition indicated by this record. In fact, in case of each material issue, witnesses testify affirmatively both ways, and it seems that this is a case peculiarly within the province of the jury to determine the credibility of the witnesses and the weight to be given to their testimony, and, since the jury have resolved it in favor of the plaintiff, we cannot disturb their verdict.

The other assignments from 9 to 14, inclusive, attack the findings of the jury in the same way; that is, that such findings "are without evidence to support them" or such findings are against the weight or the preponderance of the evidence, etc. We fail to see how it could serve any good purpose for this court to go through the statement of facts and call out and quote the testimony of the witnesses, and the circumstances which support these findings; so, applying the observations next above to the other assignments, we overrule them without further comment.

Affirmed.